THE STATE, HERMAN I. TIMKEN, PROSECUTOR, v. JAMES W. TALLMADGE.

A mayor of a city officially promised a reward for the apprehension of a fugitive municipal officer, and on account of the absence of any authority in the mayor to bind the city there was no principal to respond. *Held* that, by reason of this excess of his authority, the mayor became personally liable for the performance of the contract.

---

On *certiorari.*

This writ brings up a judgment entered in the First District Court of Jersey City.

The action was brought to recover an unpaid part of a reward offered for the apprehension of a fugitive defaulting officer of the city of Hoboken.

The following is a copy of the paper upon which the plaintiff grounded his right of action :

MAYOR'S OFFICE.

This is to certify that the bearer is entitled to receive the sum of five hundred dollars, lawful money of the United States, when the following conditions have been complied with :

1. John McMahon, late collector of revenue for the city of Hoboken; now a fugitive from justice, must be delivered into the custody of the public prosecutor of Hudson county at the county jail.

2. The said John McMahon must be properly identified.

Upon presentation of this certificate (after above conditions have been complied with) at my office, in the city of Hoboken, the above-mentioned reward will be paid.

H. I. TIMKEN,

*Mayor.*

At the time this paper was delivered to Tallmadge Mr. Timken was mayor of the city of Hoboken.

Argued at June Term, 1891, before Justices SCUDDER and REED.

For the prosecutor, *William S. Stuhr.*

For the defendant, *William D. Edwards*

The opinion of the court was delivered by

REED, J.   The only question of law which is discoverable in the record of the proceedings in the District Court is this : Does an action lie against the defendant personally, assuming that the conditions enjoined in the paper were performed ? That the paper was obtained without fraud, and that the conditions were executed, we must assume in the face of the findings of the trial court.

But the prosecutor insists that the defendant below entered into the engagement as a public officer, and that no personal

responsibility for the payment of the amount named rests upon him. If the engagement into which the defendant entered had been within the scope of his official authority, I think that this view would be sound.

There is a well-defined distinction between the contracts entered by private agents and those contracts made by public agents, in respect to their personal responsibility.

Where a private agent does not attempt to bind his principal, and in terms imposes the obligation upon himself, the rule is, he incurs by such act a personal liability, although he describes himself as agent. *Dayton* v. *Warne*, 14 *Vroom* 659. But this is not the rule where the obligation is the same, but the agent is acting within the scope of his authority as a public agent. *Knight* v. *Clark*, 19 *Vroom* 22; *Woodbridge* v. *Hull*, 18 *Id.* 388.

A public agent, whenever the contract is within the limits of the officer's power and duty, is not personally bound unless a contrary intention is plainly indicated by the terms and circumstances of the transaction. The presumption is that he is acting in his official capacity, and that the engagement is meant to be with the public only. *Woodbridge* v. *Hull*, *supra*.

The paper signed by the mayor does not rebut but fortifies this presumption.

The service for which the money was to be paid was a public service. The fugitive was a municipal officer.

The promise was made by the defendant over his official title as mayor. The money was to be paid at the mayor's office.

Therefore, if it had appeared that the mayor had, as a part of his official power and duty, the authority to bind the municipality or any of its departments by such a promise, no one would doubt for an instant that the action would lie against the city alone.

It, however, conclusively appeared that no such authority or duty existed. In fact, the mayor was without the least semblance of power to act for any public body in the matter.

Now, a rule applicable to private agents is that if an agent contracts, although in his character of agent, with no responsible principal to whom resort may be had, the law presumes that he contracts upon his personal responsibility and intends to bind himself and so holds him, for in no other way could the contract have any validity. *Booth* ads. *Wonderly,* 7 *Vroom* 250, 255 ; *Dun. Agency* (*Paley*) 374.

Whether this doctrine applies to public agents has been denied by some courts and doubted by others, except when there existed some express warranty of authority or fraudulent conduct on the part of the agent. The cases are collected in Mr. Mechem's useful book on public officers, sections 809–815.

It is useless to examine these cases, for the rule applicable to private agents is extended to public agents in its full vigor by this court in the case of *Bay* v. *Cook,* 2 *Zab.* 343.

In that case an overseer of the poor had directed a physician to attend a pauper. The charges were made against the overseer as such.

An action was brought against the township to which the pauper was chargeable, in which action the physician was nonsuited on the ground that the overseer was not authorized to bind the township.

Another action was then brought by the physician against the overseer personally, and a verdict was returned against him.

Upon error, it was urged that the overseer was acting as a public agent, and that the physician had recognized him as such. This was not denied, but, nevertheless, this court held the overseer personally liable for the physician's bill. The court remarked : " If an agent, either public or private, exceeds his authority in making a contract, he is personally liable for its performance, for the law will esteem him as acting in his individual capacity rather than suffer the contract to fall."

Upon the rule laid down in that case, the judgment brought up is affirmed.