BAY v. COOK. ·

1. A justice's order for relief is absolutely necessary to make the township liable on the contracts of an overseer of the poor for the support of a pauper, or to make the board of freeholders or trustees of the poor house liable where there is a county poor house. An order of removal is not sufficient without the order for relief.

2. Where an overseer of the poor, or any other agent, makes contracts without sufficient authority legally to bind the township or his principal, he is personally responsible, although the contract may be in the name of the principal, and credit given to the principal.

3. A book of account is admissible in evidence, even where the items on the face of the book are not charged on the same day when the services were rendered, if the charge be made in the usual course of such business.

4. A charge in a book of accounts is sufficient, even where it mixes up several items in the same general charge, and does not give any information as to the amount or value of each or of either of the items charged.

5. It is no variance from the bill of particulars rendered if the book of accounts charged to A. B., overseer of the poor, &c., items which in the bill are rendered as charged to A. B.

6. It is not a fatal objection to a physician's bill or charge in his book, that it contains well known and usual abbreviations.

## Error to Morris Circuit Court.

This was an action of assumpsit, brought against the defendant below, who was an overseer of the poor of the township of Washington, in the county of Morris. It was brought against him to recover compensation for medical attendance, &c., rendered by the plaintiff below, who is a physician, to a pauper who was a charge upon that township. The services were rendered while the pauper was in the township of Independence, in the county of Warren; but after an order of removal had been obtained, the situation of the pauper, who was exceedingly ill, not admitting of his immediate removal. The order of removal was obtained April 8, 1845, and served the next day on the overseer of Washington, who took charge of him. The plaintiff had previously attended the patient, and after the order he was requested by the overseer to continue his services and to attend him strictly. No nurse was employed, and the physician was promised by the overseer that he should be remunerated for the assistance he might render to the patient's wife in dressing his diseased limb.

The bill against the overseer for these services was presented to the trustees of the poor house of Morris, but not paid. After a fruitless action against the township, in which the plaintiff was nonsuited, this suit was then commenced against the overseer.

Upon the trial of the cause in the Morris county Circuit Court, before Justice Whitehead, ten bills of exception were taken by the defendant below, and sealed, upon which the errors in this court were assigned.

The first five bills of exception were to the admission of the plaintiff's books of account, for the reasons—1st. That they varied from the bill of particulars furnished, in charging to "A. Bay, overseer of the poor, &c., Dr.," when the bill of particulars charged to "A. Bay, Dr." 2d. That they were indefinite, charging as follows: "April 8, 1845, to visits, medicine, &c., $.75." 3d. That they were not charged on the day when services were rendered, were unintelligible, and did not distinguish the amount charged for each item, as in this charge:

1845, April 16. For Wm. Sharp for vts iij & medicine
Best P. Barks ℥j Elixir vitriol ℥j to day $2.00
vts iij & medicine 13th 14th & 15th inst $5.00

The sixth bill of exception was to the admission of the testimony of J. H. D., that the defendant had requested him to furnish necessary groceries for the pauper, and had paid him for the same.

The seventh bill of exception was to the refusal, by the court, to permit the defendant to prove that the trustees of the poor house recognised their liability to pay the bill, and why they refused to pay it.

The eighth bill of exception was to the admission of evidence as to the rate of charges allowed by the fee bill of the state medical society.

The ninth bill of exception was to the charge of the court, which was as follows:

That there were two questions in this case.

*First*. Is the defendant, under the evidence, personally liable to pay the plaintiff what he may be reasonably entitled to receive for his services? Had the defendant, when he em-

Bay v. Cook.

ployed the plaintiff to render his professional services to the pauper, complied with the requirements of the statute, so as to render the township of which he was overseer liable, he would be exempt from personal liability.  In order to render a township liable for services to a pauper, upon the application or request of the overseer, it is necessary there should be an order for relief under the provisions of the ninth section of the act concerning the poor.  *Revised Statutes* 882.  If the overseer omits to procure this order, the township is not liable for any services rendered the pauper.  It was for the want of this order that this plaintiff was nonsuited in an action prosecuted against the township of Washington for the recovery of this account. Although the services of the plaintiff were rendered at the request of the defendant, as overseer of the poor, yet his township is not liable, by reason of the neglect on his part in procuring the order.  For this neglect he has become personally liable. When applied to by the defendant to render his services to the pauper, the plaintiff had a right to presume, that as overseer of the poor, he had done all his duty, so as to make his principal liable.

Again.  No action will lie for the recovery of this account against the trustees of the county poor house or against the board of chosen freeholders of the county, as has been contended by the defendant's counsel.  If the defendant became personally liable, his liability continued notwithstanding what afterwards took place between the trustees and the defendant, and between these parties and the defendant and the trustees.  Assuming that all the evidence is true in relation to the organization of the county poor house, and the several interviews between the defendant and the trustees, and the communication had between the plaintiff and the trustees, or their president, Mr. Bryant, there is nothing in it which will discharge the defendant from his liability, or which will render the board of chosen freeholders of the county liable.

*Second.* The other question in the cause is, what amount is the plaintiff reasonably entitled to receive ?  This is a question for the consideration of the jury.  The jury have before them the plaintiff's books of account, and, in ascertaining the amount,

they should be governed by them, in connection with the testimony of the witnesses, who have testified to the condition of the pauper, and the evidence of the physicians, as to what would be an allowance for the services rendered, and whether the amount of services claimed were necessary. As the plaintiff had charged much less for services than what is allowed for like services by the state medical society, the jury were instructed to lay out of view entirely the evidence of the plaintiff of the fees allowed by that society. It was manifest, from the evidence, that the plaintiff, in making his charges, had not been governed by the rules or regulations of the society in reference to the amount charged.

The jury were further instructed, that neither party should be prejudiced by the non-production of the fee bill of the medical society of the county of Warren.

In determining the amount, the jury were instructed not to allow the plaintiff any charges contained in the bill of particulars furnished in the cause not written in plain English words. To all of the said charge, so given under title first, collectively, and to each portion and subject matter of the first of said charge, separately, the defendant excepted.

The tenth bill of exception was to the refusal of the court to charge the jury on sixteen points, submitted in writing by the defendant's counsel, the judge holding that they, or so much of them as were relative to the issue, were substantially included in the charge already given.

The cause was argued before the CHIEF JUSTICE and Justices NEVIUS and CARPENTER.

*J. J. Scofield,* for plaintiff in error.

The overseer of the poor, the agent of the township, is sought to be personally held liable upon an implied assumpsit, because he had neglected to obtain an order of relief, which seems to have been supposed necessary to bind the township. But no order of relief was in fact necessary in order to make the township liable. Yet, if otherwise, still the overseer is not personally responsible. Sharp, the patient, was a county pauper, and an order of relief, such as may charge a township, is

not necessary where there is a county poor house, as in Morris, and the county has assumed the support of the poor. It is inconsistent with the proceedings in such a case. The trustees of the poor house are the judges of the amount of care and attention which a pauper is in such case to receive. *Rev. L.* 323; *Rev. Stat.* 189.

An order of relief is not always necessary. 1 *Wend.* 493, 501; 4 *Harr.* 53, 60; 1 *John.* 486; 1 *H. Black.* 253; 4 *Halst.* 276.

The trustees of the poor house were liable. They have recognized their liability; no assumpsit can therefore be implied against the overseer and agent. *Chit. Contr.* 79, *and cases;* 12 *Wend.* 180; 12 *John.* 447; 1 *Am. Lead. Cas.* 458.

The overseer was a public officer, who might be indicted for any neglect of public duty, but is not liable to this action. 2 *Pen.* 806; 1 *Halst.* 118; 1 *T. R.* 172; 1 *Cranch* 145; 5 *Cow.* 646; 6 *Ib.* 280; 18 *John.* 123; 19 *Ib.* 262.

The liability of agents, because of want of power to bind principal, is a principle which does not apply to public agents. *Story on Agency* §§ 280 *to* 285; *Paley on Agency* 374, 376; 2 *Kent* 632 (*5th ed.*)

A public officer is not to be held personally liable for error of judgment. 1 *Denio* 595; 3 *How. S. C. Rep.* 87.

As to the books of account. The charges are against Bay, as overseer, and not against him individually.

They are illegal in character, being lumping charges, as for instance, one charge for three different visits on as many days.

The charges in the book are not specific and intelligible, nor in plain English words. 1 *South.* 370; 2 *Cow. Phil. Ev.* 693, 699, *and cases;* 2 *Bouv. Law Dict. Tit.* " *Original entry.*

*Whelpley,* contra.

The overseer requested the physician, after the order of removal was obtained, to continue his attendance; not only so, but he gave him directions to give strict and special attention. The charges were made against the overseer, but, at his request, the bill for the services so rendered was presented to the county board, who offered to pay the pitiful sum of

$40. An action was then brought against the township of Washington, but the plaintiff was nonsuited, because there had been no order for relief, which was held necessary in order to charge the township. This action was then brought.

An order of relief was necessary; just as much so, as if there had been no prior order of removal. An order not only establishes the necessity of relief, but it settles the amount. A pauper may be removed, and yet possibly no relief may be necessary. 4 *Harr.* 58; *Pen.* 76; *Ib.* 806; 3 *Halst.* 166; *Ib.* 193; 5 *Cow.* 644.

The trustees are not liable. They are a mere committee of the board of chosen freeholders, and are only authorized to relieve in cases where some township is bound; and none was bound in this instance, because there had been no order of relief obtained. The township, however, is primarily liable, notwithstanding the establishment of a county poor house, as is evident from the practice on orders of removal, which are not to the county at large, but to some particular township.

The contract was actually made with the overseer. He is the agent of the township, but he failed to perform such part of his duty as was necessary to relieve himself and charge the township. He did not act within the scope of his authority, and is therefore personally liable. It is no answer, that he was a public officer, for such officer is only protected while acting within the scope of his authority. There is no difference, in this respect, between public and private agents.

A public agent is bound when he does not disclose his agency, and also when he expressly assumes a personal responsibility.

The overseer was not the agent of the trustees, but of the township, and he exceeded his authority. The tenth section of the act (*Rev. Stat.* 882) shows it to be the policy of the law to make the overseer personally responsible, when he exceeds his authority. He is to forfeit any money expended without an order.

This is not the case of an agent of the supreme power in a state, to which the doctrine of public agent applies. The overseer is the agent of a mere municipal corporation liable to suit.

Bay v. Cook.

The contract was personal, and the overseer is personally bound. 3 *John. Cas.* 70 ; 13 *John.* 307 ; 7 *Wend.* 106 ; *Ib.* 315 ; 2 *Kent* 631, *and note*; 2 *Greenl. Rep.* 358 ; 9 *S. &. R.* 212.

In regard to the charges, the account rendered was, according to the statute, "in plain English words, or as nearly so as the articles will admit." *Rev. Stat.* 510. Physician's charges were formerly in Latin, and it was the design of the statute to reform this practice. Certainly the ordinary abbreviations may be used for pound, ounce, drachm, &c., which are known in mercantile usage. So if the ordinary name of the article sold be Latin, it may be so charged.

The mode of charging was usual and proper under the circumstances. Every mechanic is in the habit, at the end of two or three days or a week, as the case may be, of charging for the work of several days at once ; so may a physician enter his charges in like manner.

NEVIUS, J.   This case is presented to us in voluminous form, embracing ten bills of exceptions, taken and sealed at the trial, and the assignment of twenty-three errors in the proceedings of the court below. To consider all these separately would lead to a more protracted discussion than the law or merits of the case, in my opinion, call for. I will, therefore, briefly state so much of the case as I deem necessary for a full understanding of the questions really involved in it, and which we are called to decide.

The defendant in error, a practising physician, brought his action against the plaintiff in error, who was an overseer of the poor for the township of Washington, in the county of Morris, to recover for medicine, attendance, and nursing, found and provided for one William F. Sharp, a pauper, whose legal settlement was in said township. The pauper fell sick, and became a public charge in the township of Independence, in the county of Warren, and an order of removal was legally made out, to have him and his family removed to the township where his legal settlement was. But being too sick to be removed, the plaintiff in error employed the defendant to administer to his necessities, and afford him such medicine, at-

tendance, and nursing as his case might require. It is under this employment that the services were rendered for which this action is brought. The charges in the plaintiff's book were made against *Andrew Bay, overseer of the poor of Washington township,* Morris county. It further appears, that in the county of Morris there is a county poor house, where, by law, the poor of said county are to be sent, and kept at the expense of the county. And it also appears that the plaintiff below first brought his suit against "the Inhabitants of Washington" for the recovery of his bill, but was defeated in that action, on the ground, that the township was not liable, no order for relief having been made, as required by the "act for the settlement of the poor."

With this brief statement of the material facts in the case, I proceed to consider such of the errors assigned as are entitled to weight in our final decision.

In the first place, it is insisted that the plaintiff's remedy, if he has one, is against the trustees of the county poor house, or if not against them, then against the inhabitants of the township of Washington, where the pauper had his legal settlement, and not against the defendant, and, more especially, not against him in his individual capacity. That the defendant, being an overseer of the poor, was the agent both of the trustees of the poor house and of the township and in the employment of the plaintiff, acted in that capacity, and with the knowledge of the plaintiff, and therefore is not personally liable. It is clear that the services and attendance for which the action is brought were *rendered* by the plaintiff; that they were rendered to a pauper, legally chargeable to the township of W., and that they were rendered at the instance of the defendant. It will not, therefore, be denied that the plaintiff is entitled to remuneration for such services from some source, and that the law ought to provide him a remedy. Is that remedy against the trustees of the poor house or the board of chosen freeholders of the county, who, by statute, have the direction, superintendence, and government of such poor house? I think not. For although the statute provides that the poor of the county shall be sent to, and kept in such poor house, at the

Bay v. Cook.

expense of the county, this pauper had not been sent there, and had not been recognised by the freeholders, or their trustees or officers, as chargeable to the county when the services were performed, nor did the defendant act as their agent, nor was he their agent in employing the plaintiff, nor was there any evidence that the plaintiff gave the credit to the board of freeholders, or that the services were rendered upon their credit. It is true that the trustees, on some occasion after the bill had been contracted, offered the plaintiff to pay it, on condition that he would abate about two-thirds of the amount; but such offer, not being accepted, would in no wise make them liable, or give the plaintiff a remedy against them. It was voluntary on their part, without legal consideration, and the plaintiff was not bound to accept it; and if his charges were fair and lawful, the offer was an unworthy attempt at a compromise.

Has the plaintiff a legal remedy against the township? This may be answered by the fact, that a court of competent jurisdiction has already decided that the township was not liable. But if that question were still open, I am of opinion that the court was right in that decision. By the ninth section of the "act for the relief and settlement of the poor," *Rev. Stat.* 882, it is provided, " that on application for relief by any poor person to any overseer, the latter shall apply to a justice, who, with the overseer, shall inquire into the state and circumstances of such poor person; and if it appear to said justice that he is in such circumstances as to deserve relief, the justice shall give an order in writing to such overseer to make such allowance, &c.; and the said overseer shall make no other or further allowance." The township cannot be liable, then, without such order for the payment of the plaintiff's bill. In the case of *Perth Amboy* ads. *Smith*, 4 *Harr.* 58, the court said, " It may be questionable whether in any case, however emergent, an overseer of the poor can make any advances or engagements upon the credit of the township, without the previous order of a justice of the peace." And it is there further said, " that such is the doctrine held by the New York courts, in several cases, under a like statute."

The question then recurs, is the defendant legally responsible under the circumstances of this case? He contends that he is not, because the credit was not given to him in his individual and personal character; that the charges were made against him in his official capacity, as overseer of the poor, by the plaintiff, and if liable at all, it is in such official capacity; and secondly, that being a public agent of the township, and such agency being known to the plaintiff at the time of his employment, and the subject matter of the contract being a provision for a pauper of the township, the township must be liable, and not he. Neither of these answers can avail him. The charge was substantially against the defendant, and the addition of the words " overseer of the poor " may be esteemed as descriptive of the person. The defendant employed the plaintiff to render the service, and required that it should be rendered with special care, and the plaintiff had a right to charge him in the manner he did, and to look to him personally for compensation, unless the latter can defend himself on the ground of his public agency. This, I apprehend, he cannot do. If an agent, either public or private, exceeds his authority in making a contract, he is personally liable for its performance, for the law will esteem him as acting in his individual capacity, rather than suffer the contract to fail. It is not the business of the party with whom such contract is made to inquire whether the professed agent is acting within or without the scope of his agency. I fully approve the principles laid down by Justice Sutherland, in the case of *Mott* v. *Hicks,* 1 *Cow.* 536, " that if a person undertake to contract, as agent, for an individual or corporation, and contracts in a manner which is not legally binding upon his principal, he is personally responsible; and the agent, when sued upon such contract, can exonerate himself from personal responsibility only by showing his authority to bind those for whom he has undertaken to act." In this case the defendant failed to make his principal legally liable, by omitting to obtain the order for relief, as required by the statute; and, upon the principles above mentioned, must be personally responsible. The action, I think, was properly brought.

Bay v. Cook.

Another exception taken at the trial, and relied upon here for the reversal of this judgment, is, that the account, or book of account, produced at the trial did not correspond with the bill of particulars furnished to the defendant, inasmuch as the bill did not show the charge against him to be as " overseer of the poor." This is no such variance as was calculated to mislead the defendant. He was sued in his individual capacity, declared against in that capacity, and the form of the entry in the book, at the heading of the account, cannot be material. Even if the charge in the book had been made against the township, I am of opinion that, upon the evidence in this case, as now before us, the plaintiff would have been entitled to recover against the defendant, although in his bill of particulars it was stated as a charge made against the defendant himself.

It is further objected, that the bill or account of the plaintiff is not wholly in the English language, and that it contains charges, without specifying distinctly for what services. In examining the bill of particulars furnished, I find no such defect in language as will vitiate the claim under the statute, which does not prohibit abbreviations, or require every item of charge to be in English. The act requires that the bill of particulars shall be " in plain English words, or as nearly so as the articles will admit," and I cannot say that in this respect the act has been violated. The charges of $5, in several instances, embracing services of two or three days, are neither contrary to law nor the practice that prevails with men who keep their books of account at home, while their labor and services are rendered elsewhere. But it must be borne in mind that there was other evidence in support of these charges produced at the trial besides the plaintiff's books, and the legal inference is, that they were fully maintained.

There are numerous other errors assigned in this case, but they have not been urged in the argument, and on a careful examination of them, they will be found of an extremely technical character, and ought not to prevail against the manifest justice of the verdict and judgment below.

The judgment of the Circuit Court should, in my opinion, be affirmed with costs.

CARPENTER, J. Our statute authorizes the board of chosen freeholders of each county, if they deem it necessary, to establish a county poor house, and to make ordinances and by-laws for its regulation and government. *Rev. Stat.* 189. A poor house was established in the county of Morris, and by-laws were adopted regulating the admission of the poor of the county, for whose benefit it was intended. These rules, it seems, did not require any formal order of relief after an order of removal; but the overseer of any township, in the county to which a pauper had been removed, was authorized to take such pauper to the poor house without further order. Perhaps, therefore, the general law, as to special orders for the support of paupers and the entries in the overseer's book, may not in all instances be applicable to a county poor house establishment, being superseded by other provisions. Still each township is primarily liable for the maintenance of its paupers, notwithstanding there may be a county poor house, where, after being sent, they can be maintained. It is only so far as the duty is performed by the county, that the township is relieved from its liability for the support of its poor. But, in order to bind the township, an order of relief is generally necessary, even although there may have been a prior order of removal. It was so held in a suit by this plaintiff (defendant in error) against the township, and he was nonsuited on the trial because unable to show such order. A person may be removed to his place of legal settlement, when only *likely to become chargeable elsewhere*. *Rev. Stat.* 886. The order must therefore be obtained, as well to show that relief is necessary, as also to ascertain the amount of relief to be afforded.

An order of removal had been obtained in this case, and the pauper had become chargeable upon the township of Washington; the overseer, therefore, being notified, was then bound to provide for his relief. Had the pauper been fit to remove, the duty of the overseer might have been discharged, according to the by-laws referred to, by conveying him immediately

Bay v. Cook.

to the poor house. He was not in a fit state to remove, and it was therefore his duty to sustain him at the place where he was confined by disease. The overseer did provide for the pauper, but he neglected to obtain any order of relief. He requested the plaintiff to attend upon him strictly, and to render those services which were so absolutely necessary in his diseased and helpless condition. His act would have bound the township, had it been made within the scope of his authority and after obtaining the proper order, but the officer had no authority to bind the township, except in the mode prescribed by the statute. Now it was the duty of the overseer, and not of the physician, to obtain that order, and made so by the express provisions of the statute. *Rev. Stat.* 882, § 9. The statute, in terms, directs that he should extend relief at the public charge no further than directed by the order; without it, he was to receive no allowance for any money or goods paid or distributed to any poor person. Without the order there could be no resort to the township; and can it be doubted that the overseer, who directs the services, must be personally accountable? The services may have been, and probably were performed upon the expectation of remuneration from the public, but resort to the township was unavailing from the default of the overseer. The case is not within the rule which exempts public agents contracting for the government, and when there is no liability on the part of the principal, the agent is himself responsible.

As to the character of the charges in the book, which formed the ground of a subsequent exception, I think a sufficient answer has been given to the objection by the counsel of the defendant in error. It does not seem to be necessary that the charges should always be made in the book on the very day on which rendered; in many employments this would be impracticable, and I see no difficulty in this case because the services of three days are charged at one time. Nor do I think the statute referred to will exclude the use of ordinary and known abbreviations.

GREEN, C. J., concurred.

Judgment affirmed.

CITED in *Booth* v. *Wonderly,* 7 *Vr.* 255.